**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ATLANTIC INTERNATIONAL CORPORATION and its wholly owned subsidiaries, Atlantic Manufacturing Corporation and Atlantic Marketing Corporation, Respondent.**

No. 79–1877.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1980.

Decided Nov. 30, 1981.

Richard Zuckerman, N. L. R. B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Vivian A. Miller, Susan McDonald, Washington, D. C., on brief), for petitioner.

Edward J. Gutman, Baltimore, Md. (Rochelle S. Eisenberg, Blum, Yumkas, Mailman, & Gutman, Baltimore, Md., on brief), for respondent.

Before WIDENER, HALL and SPROUSE, Circuit Judges.

WIDENER, Circuit Judge:

The National Labor Relations Board (the Board) seeks enforcement of a remedial order entered by it against Atlantic International Corporation and its wholly owned subsidiaries, Atlantic Manufacturing Corpo-

ration and Atlantic Marketing Corporation (the Company). The Company objects to this order on the grounds that the Board lacks the authority to impose a make-whole remedy, and, in the alternative, that the remedy is inappropriate in this case. We enforce the order as a proper exercise of the Board's discretionary remedial authority.

On July 30, 1976, the Board conducted a representation election in a unit of 455 of the Company's employees. Following certain challenges and objections by the Company, the Board certified the Carpenters' District Council of Baltimore and Vicinity and its Affiliates, Cabinet Makers' Local No. 974, United Brotherhood of Carpenters and Joiners of America, AFL–CIO (the Union), as the bargaining representative for that unit.

Subsequent to certification, the Union filed an unfair labor practice complaint alleging the Company's refusal to bargain. The Board found that the Company had violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., § 158(a)(1, 5), and entered a bargaining order which was enforced by this court on December 26, 1979. 236 N.L.R.B. 903, enf'd sub nom. NLRB v. Atlantic International Corporation, et al., 612 F.2d 1308 (4th Cir. 1979) (unpublished).

During the pendency of that action in the latter half of 1977, the Company experienced serious financial problems. In addition to a restriction of its cash flow, the Company was notified that the premium for the health insurance coverage that it provided its employees would rise by approximately 48%. At that time, the Company unilaterally changed certain terms and conditions of employment. It required employees to contribute to the maintenance of the health insurance plan which previously had been provided free of charge. Furthermore, the Company lowered its pay scale for a period of approximately two weeks, conditioned reemployment of laid-off workers upon acceptance of that pay scale, and suspended its practice of giving its employees hams and turkeys for Thanksgiving and Christmas. A ruling concerning hams and turkeys is not at issue here. The Union filed unfair labor practice complaints as to these changes, again claiming that the Company had refused to bargain in violation of sections 8(a)(5) and (1) of the Act.

The Board affirmed the administrative law judge's finding that the Company violated these sections by "unilaterally discontinuing full payment of employee health insurance premiums, . . . temporarily reducing wages, and conditioning reemployment of laid-off employees upon acceptance of the reduced wage rate." Contrary to the administrative law judge's decision, however, the Board ordered restitution of losses suffered by qualified employees as a result of the discontinuance of the fully paid health plan.

The finding of the Board that the Company violated sections 8(a)(5) and (1) of the Act is not the subject of review by the Company.

In arriving at a remedy, the administrative law judge applied his interpretation of the N.L.R.B. case of *Wonder State Mfg. Co.*, 147 N.L.R.B. 179 (1964), *enforcement denied on other grounds*, 344 F.2d 210 (8th Cir. 1965). He construed *Wonder State* as requiring that he determine what the result of bargaining would have been had the parties bargained in good faith and that he enforce the hypothetical result accordingly. The administrative law judge applied this principle to the Company's discontinuance of its contributions to the health plan and concluded as a fact that negotiations would not have altered the Company's decision. In contrast, applying the same principle, the administrative law judge found that, had the Company bargained in good faith as required, it would not have reduced wages.

The Board, in its opinion and order, found that the administrative law judge had misapplied *Wonder State* to the health insurance premiums. It found that the premiums were an ongoing, fixed benefit, administered on a regular basis and, as a term or condition of employment, not subject to unilateral change. The Board thus attempted to divorce itself from the administrative law judge's findings with respect to

health insurance premiums, whatever the validity of its reason.

█ In adopting the administrative law judge's rulings, findings and conclusions with respect to the unilateral wage reduction, the Board erroneously adopted his construction of *Wonder State*. If the Board's discussion of the insurance premiums can be read as holding that the administrative law judge should have treated the health benefits as equivalent to wages and therefore should have applied the same test, it is also in error. The notion that the Board may require a party to comply with what it speculates the outcome of negotiations would have been had good-faith bargaining taken place clearly contravenes the holding of *H. K. Porter Co., Inc. v. NLRB*, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 126 (1970). *Porter* forbids the Board from requiring a company and a union to bargain to a foreordained result. The principle applied here by the administrative law judge and the Board goes even a step beyond *Porter* in requiring the parties to act as though they had bargained to a conclusion when no such bargaining in fact had taken place.

The administrative law judge, however, also found a unilateral reduction in wages and health benefits without bargaining during the time the Company should have been bargaining with the Union was an unfair labor practice, and this finding was adopted by the Board.

When we strike out, as we do, from the findings of the administrative law judge and the Board all reference to what the parties would have arrived at had they bargained, we still find a unilateral reduction in wages and health benefits during the time when the Company should have been bargaining. This is not dependent upon the other subsidiary finding of what conclusion the parties would have arrived at had they bargained.

█ A unilateral reduction in wages and benefits during the time the Company should have been bargaining is within the proscription in this circuit of *Overnight Transportation Company v. NLRB*, 372 F.2d

765 (1967). Restitution of losses with reference to pre-existing wages and benefits is a restoration of the *status quo ante, Overnight,* p. 770, and we thus think the Board's order should be enforced, although we have stricken out one of the subsidiary findings. *Communist Party v. Control Board*, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961), especially pp. 66–67, 81 S.Ct. pp. 1394–95.

We also think the order of the Board is within its broad discretion even considering the financial condition of the Company.

ENFORCEMENT GRANTED.

K. K. HALL, Circuit Judge, concurring:

Although I concur in the majority's result, I think the opinion incorrectly criticizes the Board's decision. Contrary to the impression given by the majority, the Board did not adopt the ALJ's application of *Wonder State v. NLRB*, 147 N.L.R.B. 179 (1969). Therefore, I would affirm the decision of the Board, without extraneous reference to the *Wonder State* problem.

In *Wonder State*, the Board upheld an employer's decision to unilaterally eliminate Christmas bonuses. In that case, management's decision in September to withhold bonuses turned out to have been justified because, by Christmas time, the business outlook was dismal. Nevertheless, the essence of the Board's decision was merely a recognition that management should have discretion whether or not to give Christmas bonuses.

The ALJ's opinion in this case does contain some faulty legal analysis. He mistakenly interpreted *Wonder State* as requiring him to decide whether bargaining would have made any difference in the employer's decisions to decrease benefits and reduce wages. Pursuing this analysis, the ALJ found that Atlantic's business was so bad that it could not afford to pay the additional insurance premiums regardless of whether negotiations had been held. Accordingly, the ALJ ruled that Atlantic did not have to reimburse its employees for their contribution to the insurance program. However, the ALJ concluded that business was not bad enough to justify the reduction in

wages, and added that "if the Respondent had engaged in good faith bargaining on these matters, it would not have taken these benefits away from the employees." Therefore, he required the employer to reimburse the employees for lost wages.

On review, the Board reversed the ALJ's decision on the issue of insurance premiums, but affirmed the decision on wages. In reviewing the insurance issue, the Board specifically rejected *Wonder State* as authority, noting that Christmas bonuses are variable depending on economic conditions, while insurance premiums are an ongoing, fixed benefit. However, in reviewing the wages issue, the Board did not analyze the ALJ's opinion, but rather summarily affirmed the award.

The majority reads the Board's summary affirmance on the wages issue as an adoption *sub silentio* of the ALJ's analysis of *Wonder State.* It puzzles me how the majority can reach this conclusion when the Board had explicitly stated that *Wonder State* would not apply to the analogous issue of insurance premiums. Certainly wages—like insurance premiums—fall within the "fixed benefit" category. More likely, the Board recognized that the ALJ had reached the right result on the wages issue (albeit for the wrong reason) and saw no reason to repeat its earlier rejection of the ALJ's interpretation of *Wonder State.* Reading the Board's opinion as a whole, it is clear that the Board considered insurance premiums *and* wages to be fixed benefits which do not fall within the ambit of *Wonder State.*

It seems that the majority would have no complaint with the Board's decision if the Board had emphasized that it disagreed with the ALJ's analysis of *Wonder State* on the wages issue as well as on the insurance issue. However, since the Board never adopted *Wonder State* at all, I see no reason why it should be required to chastise the ALJ for his incorrect interpretation of the case. Therefore, I would enforce the Board's decision without any caveats.

* Former Fifth Circuit case, Section 9(1) of Public